IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BROCK A. PURDY, | |
| Petitioner, | |
| v. | Civil Action No.: BAH-24-582 |
| CRYSTAL CARTER, | |
| Respondent. | |

MEMORANDUM OPINION

Petitioner Brock A. Purdy filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the Federal Bureau of Prisons' ("BOP") practice of refraining from applying earned time-credits toward his supervised release or release to pre-release custody based on his Prisoner Assessment Tool and Targeting Estimated Risk and Needs ("PATTERN"). ECF 1; ECF 3. In response, Respondent, former Warden Carter, has filed a motion to dismiss, or in the alternative, for summary judgment. ECF 7. The motion is opposed by Mr. Purdy. ECF 10. Pursuant to this Court's order of July 31, 2024, the parties have also briefed the issue of the impact, if any, of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) on the BOP's use of the PATTERN Recidivism-Risk Scoring System. ECF 12; ECF 13; ECF 14. The pending matters have been fully briefed and there is no need for a hearing. For following reasons, Respondent's motion shall be granted, and the petition denied.

I. **BACKGROUND**

Mr. Purdy is a federal inmate who is currently confined in the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"). He is serving a sentence of 132 months imposed by the United States District Court for the Central District of Illinois for conspiracy to

distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). ECF 3, at 1. According to Mr. Purdy, he is eligible to earn 10 days of time-credit for every 30 days in "earning status" under the First Step Act ("FSA") of 2018. *Id.* He states that he is eligible to earn 365 days toward his early release. *Id.* At the time Mr. Purdy filed his Petition, his release date was August 17, 2027. *Id.* at 2.

Mr. Purdy raises four claims: (1) the BOP failed to provide a notice and comment period prior to implementing a new substantive rule as required by the Administrative Procedures Act ("APA"), *i.e.*, use of the PATTERN system to determine eligibility for earned time-credits under the FSA; (2) the PATTERN recidivism risk tool uses static factors that cannot be changed by a prisoner during service of their sentence, thus thwarting congressional instruction for use of dynamic factors and making Mr. Purdy's score invalid; (3) requiring prisoners to have a "low/min. score" to have FSA earned credits applied violates the Equal Protection Clause and the Ex Post Facto Clause of the Fourteenth Amendment; and (4) barring prisoners such as Mr. Purdy who have a "high-medium recidivism risk" score from having FSA time credits applied to their sentence is arbitrary, capricious, and an abuse of discretion. ECF 1, at 7–8. Mr. Purdy explains that he is eligible to earn FSA time-credits under the applicable statute, but the BOP has created additional barriers that prevent the credits from being applied to his sentence. *Id.* at 8. He claims that by denying application of the credits, the BOP is ignoring the stated purpose of the FSA. *Id.*

Specifically, Mr. Purdy alleges that the PATTERN scoring system and the BOP's requirement of a low or medium score to have earned time-credits applied violates the Equal Protection Clause because he has completed the same programs as other prisoners who have had earned time-credits applied to their sentence while he is denied application of the credits he earned. ECF 3, at 3. He states that the Risk and Assessment system developed under 18 U.S.C. §

2

3631(a)(4) "reassesses recidivism risk for each prisoner periodically based on factors that are dynamic and can reasonably be expected to change while in prison." *Id.* However, the current scoring system, in Mr. Purdy's view, does the opposite because it "relies on static factors which a prisoner can never be expected to change." *Id.* The majority of Mr. Purdy's score, for example, originates from his criminal history for which he is assigned 40 points and his age for which he is assigned 21 points. *Id.* He adds that the statute, 18 U.S.C. § 3632(a)(5)(A), requires the BOP to provide all prisoners with a meaningful opportunity to reduce their "classification during the period of incarceration." *Id.* Mr. Purdy, and other prisoners similarly situated, "face a mathematical impossibility when attempting to reduce their scores to low." *Id.* at 4.

Mr. Purdy states that the maximum reduction allowed for program completion is minus eight points for completing ten or more programs. *Id.* The maximum reduction for work programs is minus two points and for completion of the Residential Drug Abuse Program ("RDAP") a total of six points may be deducted. *Id.* Mr. Purdy's score of 61 points would only be reduced by 16 points, leaving him with 45 points which is a "medium recidivism risk." *Id.* Mr. Purdy states that any prisoner with a score of 55 or higher has no chance of having FSA time-credits applied to their sentence under the current scoring system. *Id.* He adds that the exception for the Warden to approve a prisoner "who would not be a danger to society" but are otherwise ineligible to have the credits applied is a dead-end because there is a 50% chance of any prisoner returning to prison. *Id.* The requests to the Warden are routinely denied. *Id.*

Mr. Purdy asks this Court to invalidate or set aside the PATTERN scoring system because its use has excluded a large percentage of eligible prisoners from having earned credits actually applied to their sentence. *Id.* at 5. According to Mr. Purdy, the BOP is "interfering with the lawful implementation of legislation by creating their own class of prisoners who are ineligible to apply

but eligible to earn." *Id.* He further states that "the plain text of the FSA is not vague at all as to who lawmakers wanted by ineligible to earn and apply time-credits . . . [t]he law includes a section of ineligible prisoners." *Id.* As relief, Mr. Purdy asks this Court to order the BOP to apply the FSA time-credits he has earned. *Id.*

Respondent provides an overview of the statutory and policy framework around the FSA, which was passed into law on December 21, 2018, amending 18 U.S.C. §§ 3621, 3624. ECF 7, at 5. The FSA increases the maximum allowable good time credits from 47 days to 54 days per year. *Id.* at 6. Respondent does not dispute Mr. Purdy's assertion that inmates are eligible to earn up to ten days of credit for every thirty days of successfully completing programming that qualifies as recidivism reduction programming but denies Mr. Purdy's assertions that eligibility means application of the credits toward release. *Id.*

The Attorney General is required by the FSA to:

> (1) conduct a review of the existing prisoner risk and needs assessment systems in operation on the date of enactment of this subchapter;
>
> (2) develop recommendations regarding evidence-based recidivism reduction programs and productive activities in accordance with section 3633;
>
> (3) conduct ongoing research and data analysis on—
>
>> (A) evidence-based recidivism reduction programs relating to the use of prisoner risk and needs assessment tools;
>> (B) the most effective and efficient uses of such programs;
>> (C) which evidence-based recidivism reduction programs are the most effective at reducing recidivism, and the type, amount, and intensity of programming that most effectively reduces the risk of recidivism; and
>> (D) products purchased by Federal agencies that are manufactured overseas and could be manufactured by prisoners participating in a prison work program without reducing job opportunities for other workers in the United States;
>
> (4) on an annual basis, review, validate, and release publicly on the Department of Justice website the risk and needs assessment system, which review shall include—

4

(A) any subsequent changes to the risk and needs assessment system made after the date of enactment of this subchapter;

(B) the recommendations developed under paragraph (2), using the research conducted under paragraph (3);

(C) an evaluation to ensure that the risk and needs assessment system bases the assessment of each prisoner's risk of recidivism on indicators of progress and of regression that are dynamic and that can reasonably be expected to change while in prison;

(D) statistical validation of any tools that the risk and needs assessment system uses; and

(E) an evaluation of the rates of recidivism among similarly classified prisoners to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups, in such rates;

(5) make any revisions or updates to the risk and needs assessment system that the Attorney General determines appropriate pursuant to the review under paragraph (4), including updates to ensure that any disparities identified in paragraph (4)(E) are reduced to the greatest extent possible;

18 U.S.C. § 3631(b)(1)–(5).

Pursuant to those obligations, then-Attorney General William Barr developed the PATTERN assessment tool at issue in this case. The PATTERN tool was developed in consultation with the Director of the BOP, the Director of the Administrative Office of the United States Courts, the Director of the Office of Probation and Pretrial Services, the Director of the National Institute of Justice, the Director of the National Institute of Corrections, and the Independent Review Committee. U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System* (2019) (available at https://nij.ojp.gov/first-step-act/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf). According to Respondent, PATTERN uses both static and dynamic factors associated with a prisoner's risk of recidivism; it is reviewed and validated annually as required by 18 U.S.C. § 3631(b)(4). ECF 7, at 7–8.

There are fifteen variables used in the PATTERN tool to create a score for general recidivism, defined as a return to BOP or a re-arrest within three years of release, and one for

violent recidivism, defined as a re-arrest for a suspected act of violence within three years of release from custody. *See* U.S. Dep't of Justice, *2020 Review and Revalidation of The First Step Act Risk Assessment Tool 2* (2021) (available at https://www.ojp.gov/pdffiles1/nij/256084.pdf). The fifteen variables are: (1) age at the time of assessment; (2) infraction convictions within the last 120 months; (3) infraction convictions for serious and violent acts during current incarceration; (4) whether the prisoner being assessed is infraction free; (5) whether the prisoner is free of any violent or serious infractions; (6) completion of programming; (7) programming for technical and vocational training; (8) drug treatment while incarcerated; (9) noncompliance with financial responsibility; (10) whether the instant offense is violent; (11) whether the prisoner is a sex offender; (12) criminal history (13) history of violence; (14) history of escapes; and (15) education score. *Id.* at 12–13. Respondent maintains that these factors are a combination of static and dynamic factors.[1] ECF 7, at 21. Half of the factors, according to Respondent, are dynamic, including work programming, drug treatment while incarcerated, program completions, and financial responsibility. *Id.* Respondent adds that "[n]early all effective [risk and needs assessment] tools incorporate both static and dynamic factors." *Id.* (citing U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System* (2019) at 26 (available at https://nij.ojp.gov/first-step-act/the-first-step-act-of2018-risk-and-needs-assessment-system.pdf)).

Respondent does not dispute that Mr. Purdy is *eligible* for earned time-credit under the FSA, nor does Respondent dispute that Mr. Purdy's credits have not been *applied* toward his

---

[1] "Static factors are characteristics of inmates that are historical and therefore unchangeable . . . . By contrast, dynamic factors are variables that may change over time and may reflect more recent inmate behavior . . . ." U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System (2019)*, at 26 (available at https://nij.ojp.gov/first-step-act/the-first-step-act-of2018-risk-and-needs-assessment-system.pdf).

supervised release. ECF 7-1 at 3–4 ¶¶ 8, 11. Respondent explains that Mr. Purdy was deemed eligible to earn FSA credits on August 23, 2022, and he has accrued a total of 639 programming days as of April 30, 2024, translating to 210 days of time-credits toward release and 0 toward placement in a halfway house or home confinement. *Id.* at 4 ¶ 11. Mr. Purdy's recidivism risk level was assessed under PATTERN as being in the high range when he was reassessed on April 19, 2024. *Id.* ¶ 12. On November 13, 2023, Mr. Purdy petitioned for an exception under the FSA to have his time-credits applied toward pre-release custody or supervised release, but the request was denied. *Id.* When Mr. Purdy is assessed as a low or medium recidivism risk level, the earned credits will be applied toward his release. *Id.* ¶ 11.

## II. STANDARD OF REVIEW

"The Federal Rules of Civil Procedure . . . to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings. Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; *see also* Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint [or petition] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the

claim showing that the [plaintiff] is entitled to relief"). "The complaint [or petition] must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint [or petition] will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

### III.  DISCUSSION

To be entitled to the issuance of a writ of habeas corpus, a prisoner must show that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). While the Attorney General and, by designation, the BOP are charged with the responsibility of calculating earned time credits for federal prisoners, a prisoner may not be detained in violation of the law. As noted, Mr. Purdy challenges the current PATTERN scoring tool because it was not passed after a notice and comment period as required by the APA and to withhold application of earned credits from him and other prisoners similarly situated violates the Equal Protection Clause and the prohibition against ex post facto laws. ECF 1, at 6–7.

Respondent disproves Mr. Purdy's claim regarding a notice and comment period for the proposed regulation. ECF 7, at 24–29. The BOP provided a notice and comment period from November 25, 2020 to January 25, 2021 prior to implementing the final rule. *Id.* at 29. The BOP received over 250 responses. ECF 7, at 28–29; FSA Time Credits, 87 Fed. Reg. 75268-01, 28 C.F.R. Parts 523 and 541, 2020 WL 6889145 (F.R.). As such, Mr. Purdy's APA claim must be dismissed.

8

A.      *Loper Bright*

This Court invited the parties to brief the effect the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (June 28, 2024) might have on this Court's review of Mr. Purdy's claims. Prior to *Loper Bright*, "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate the statute by regulation" and the agency's interpretation was given deference. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44 (1984). The *Chevron* Court noted that it had "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." *Id.* at 844. Under *Chevron*, this Court's role in cases where a statute is ambiguous was to examine whether the administrative agency's implementation of the statute through regulations is a reasonable one. *Id.* at 845.

*Loper Bright* overturned *Chevron* and changed this Court's role in reviewing an administrative agency's implementation of a statute. The BOP is such an agency. Under *Loper Bright* courts need not, and under the APA may not, defer to an agency's interpretation of the law simply because a statute is ambiguous. 144 S. Ct. at 2261–62. Pivotal in the analysis, and relevant here, is the challenge raised must pertain to a regulation put into place by the administrative agency which is being challenged under the APA. *Id.* Further, there must be some ambiguity in the statute the agency administers that conceivably calls into question the validity of the regulation challenged. *Id.*

The statute in question here unambiguously mandates that only inmates with low and minimum recidivism scores are eligible to have earned time credits under the FSA applied toward

9

pre-release custody or supervised release. *See* 18 U.S.C. § 3624(g)(1)(B), (D)(i)(I), and (D)(ii). The statute provides that eligibility for application of credits is confined to a prisoner who:

> (B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
>
> * * *
>
> (D)(i) in the case of a prisoner being placed in prerelease custody, the prisoner—
> (I) has been determined under [PATTERN] to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or
>
> * * *
>
> (D)(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under [PATTERN] to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g)(1)(B), (D)(i)(I), (D)(ii).

To the extent that Mr. Purdy takes issue with the requirement of achieving minimum or low recidivism risk scores prior to having his earned credits applied to his sentence, his challenge is to the *statute*, not the regulation. "[T]he Attorney General and the Bureau of Prisons are entrusted with sole authority to compute federal sentences." *Clinkenbeard v. King*, Civ. No. 23-3151 (JRT/LIB), 2024 WL 4355063, at *4 (D. Minn. Sept. 30, 2024) (citing 28 C.F.R. § 0.96); *United States v. Moore*, 978 F.2d 1029, 1031 (8th Cir. 1992); *see also* 18 U.S.C. § 3632(a), (a)(6) (directing the Attorney General to develop a "risk and needs assessment system" that, among other things, will "determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities"); 18 U.S.C. § 3632(d)(4)(A)(ii) (giving further discretion to the Bureau of Prisons to dole out additional time credits to prisoners it deems are at lower risks of recidivating); *Mero v. Yates*, Civ. No. 2:22-72, 2022 WL 17653228, at *5 (E.D. Ark. Sept. 27, 2022) ("The earned time credit program is new and multifaceted, and

10

the authority to implement the program and calculate an inmate's time credits is delegated to the BOP, not the federal courts."). The BOP's use of the PATTERN tool to restrict application of FSA credits to prisoners with minimum or low risk recidivism scores does not amount to an agency's "interpretation" of a statute. Rather, the BOP has done what Congress commanded it to do: create a method by which it can be determined whether a prisoner is likely to recidivate and to withhold FSA credits until that likelihood is diminished to a minimum or low risk.

### B. Equal Protection and Ex Post Facto prohibition

Although there is little question that the BOP has been given the statutory authority to administer the FSA credits, it is the exclusive province of the judiciary to address questions of law in relation to an agency's actions. *Loper Bright*, 144 S. Ct. at 2262 (stating that "questions of law are for courts rather than agencies to decide"). Here, Mr. Purdy maintains that the FSA is unconstitutional as applied to him because it treats him differently than other similarly situated prisoners. ECF 1, at 7. Mr. Purdy's *ex post facto* claim is less clear, but the Court will assume he means that the way in which the FSA is being applied to him amounts to an *ex post facto* law, *i.e.*, it adds a penalty to his sentence after the fact. Regardless, his constitutional claims fail.

The Equal Protection Clause generally requires the government to treat similarly situated people alike. *See Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show that their equal protection rights were violated, a plaintiff must demonstrate that they were treated differently than similarly situated inmates and the discrimination was intentional or purposeful. *See Williams v. Bitner*, 307 Fed. App'x 609, 611 (3d Cir. 2009) (citing *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985)). "As a general principle of Equal Protection Clause jurisprudence, 'legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.'" *United States v. Timms*, 664 F.3d 436, 445 (4th

Cir. 2012) (quoting *Cleburne*, 473 U.S. at 440). "[T]he essential command of the Equal Protection Clause has always been that the classification of persons which a law applies must be 'reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.'" *Sylvia Development Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (quoting F.S. *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).

"[T]he challenged classification need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender." *Giarratano v. Johnson*, 521 F.3d 298, 303 (4th Cir. 2008). Prisoners are not a suspect class. *Id.* (citing *Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir. 1997)). Accordingly, "while a prisoner does not forfeit his constitutional right to equal protection by the fact he has been convicted of a crime and imprisoned, prisoner claims under the equal protection clause . . . must still be analyzed in light of the special security and management concerns in the prison system."[2] *Morrison v. Garraghty*, 239 F.3d 648, 655 (4th Cir. 2001) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 136 (1977)) ("There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence."). Imperfect laws do not violate the Equal Protection Clause; rather, where "the classification has some reasonable basis, it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Giarratano*, 521 F.3d at 303 (quoting *Dandridge v. Williams*, 397 U.S. 471, 485 (1970)). In short, it is not the role of this Court to

---

[2] A prisoner's rights under the Constitution must not be inconsistent with their status as a prisoner. *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Even when strict scrutiny would otherwise be applicable to a given policy, because of the exigencies of prison administration, regulations must only be reasonably related to a legitimate penological interest. *See Thornburgh v. Abbott*, 490 U.S. 401, 409–10 (1989).

"'judge the wisdom, fairness, or logic of the legislative choices'" at issue. *Id.* (quoting *FCC v. Beach Comms., Inc.*, 508 U.S. 307, 313 (1993)).

Mr. Purdy is not treated any differently than inmates who are also in a recidivism risk category that precludes application of credits for which they are eligible; there is no suspect class involved. Prisoners are scored without regard to their race, creed, national origin, or religion. The differentiation between prisoners committed to the BOP pursues the legitimate public safety goal of ensuring that only those prisoners who are the least likely to re-offend are released early by virtue of FSA credits. Thus, equal protection does not invalidate the PATTERN tool.

An *ex post facto* law creates a more onerous punishment that did not exist at the time the prisoner was sentenced. *See Dobbert v. Florida*, 432 U.S. 282, 294 (1977) ("It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law."). Where, as here, the "new" law is ameliorative, it does not qualify as an *ex post facto* law. *Compare Nat'l Ass'n for Rational Sexual Offense L. v. Stein*, 112 F.4th 196, 202–03 (4th Cir. 2024) (upholding sex offender registration law as a "civil, nonpunitive scheme"), with *United States v. Coby*, 65 F.4th 707, 712 (4th Cir. 2023) (holding that use of sentencing guidelines with "retrospective increase" of range applicable to a defendant is an ex post facto violation). The FSA does not make Mr. Purdy's punishment more onerous; rather, it provides him with an opportunity to be released from custody earlier than he otherwise would have been released.

## IV.   CONCLUSION

For the reasons noted, the Petition for Writ of Habeas Corpus must be denied and Respondent's Motion granted. A separate Order follows.

| | |
|---|---|
| __11/1/2024__ | __/s/__ |
| Date | Brendan A. Hurson |
| | United States District Judge |